NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**

JAMES J. WALDRON, CLERK

[March 31, 2011]

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: s/ Elizabeth Grassia, Deputy

|  |  |
|---|---|
| IN RE: | : |
|  | : |
| RAPID FREIGHT SYSTEMS, INC., | :  CHAPTER 7 |
|  | : |
| Debtor. | :  CASE NO. 09-34047 (GMB) |
|  | : |
|  | :  <u>MEMORANDUM OPINION</u> |

APPEARANCES:

Nicola G. Suglia, Esquire
Fleischer, Fleischer & Suglia
Plaza 1000 at Main Street, Suite 208
Voorhees, NJ  08043

Paul Stadler Pflumm, Esquire
Law Office of Joseph A. McCormick, Jr., P.A.
76 Euclid Avenue, Suite 103
Haddonfield, NJ  08033-2387
Attorneys for Linda L. McMackin, Trustee

Samuel J. Ragonese, Esquire
Ragonese, Albano & Viola, LLC
735 N. Black Horse Pike
Runnemede, NJ 08078
Attorneys for Creditor, Bentley Truck Services, Inc.

Steven J. Jozwiak, Esquire
Law Office of Steven J. Jozwiak
601 Longwood Avenue
Suite 300
Cherry Hill, NJ 08002
Attorneys for Petitioning Creditor Winner Logistics, Inc.

I.    PRELIMINARY STATEMENT

On October 21, 2009, Fleischer, Fleischer, & Suglia ("Fleischer") filed a motion to determine the extent and validity of statutory attorney liens and to determine Fleischer's other obligations and responsibilities (the "Fleischer Motion").  Linda McMackin, the Chapter 7 Trustee filed a cross-motion to determine the extent and validity of the alleged statutory attorney liens (the "Statutory Attorney Liens") and for related relief ("Trustee's Cross-Motion").  On November 11, 2009, creditor Bentley Truck Services, Inc. ("Bentley") filed a cross-motion to determine the extent and validity of the liens of Bentley (the "Bentley Cross-Motion").  For the reasons set forth below, this Court holds that Fleischer has a retaining lien in the amount of $6,940.01 on account of services rendered in connection with certain matters which were owed pre-petition, that the funds remaining in the trust accounts held in trust by Fleischer (the "Trust Monies") should be turned over to the Trustee, and that Fleischer has no lien rights over any funds recovered in connection with any active cases pending on the petition date which were commenced by Fleischer.

This court has jurisdiction pursuant to 28 U.S.C. §§1334, 151 and 157(a).  This is a core proceeding under 28 U.S.C. §157(B)(2)(K).

II.    BACKGROUND

The instant case was commenced by the filing of an involuntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on September 11, 2009 (the "Petition Date").  The Debtor failed to file an Answer and an Order for Relief was issued on October 19, 2009.  The Trustee was appointed as Interim Trustee on the same day and continues to serve as Chapter 7 Trustee in the Debtor's case (the "Trustee").

2

Prior to the Debtor's bankruptcy case and over the past several years, Fleischer represented the Debtor in collection matters in various state court proceedings. During the course of its representation of Debtor, Fleischer handled collection matters which allegedly resulted in the collection of funds in an approximate amount of $20,800.00.[1] Fleischer also alleges that it represented Debtor, pre-petition, in several collection matters which were still pending/unresolved at the time of the Petition Date.

After the Petition Date, on or about October 19, 2009, Fleischer received correspondence from the Trustee demanding immediate turnover of the Trust Monies. As a result of said correspondence, and an alleged telephone conversation between Fleischer and the Trustee, Fleischer filed the instant Motion to determine the extent and validity of the statutory loan and for related relief. In the Fleischer Motion, Fleischer specifically requested entry of an Order providing that Fleischer is entitled to fees in the amount of $6,904.01 in connection with its representation of Debtor in collection matters concluded prior to the Petition Date, and that Fleischer is entitled to an attorney lien "in an amount equal to one third (1/3) of any and all funds recovered in connection with active cases pending at the time of the filing of the involuntary bankruptcy petition in this matter." See Doc. 8-1. Case No. 09-34047. The Trustee subsequently filed a cross-motion to determine the extent and validity of Fleischman's alleged lien, wherein the Trustee requested the entry of an order limiting the extent and validity of Fleischer's alleged lien to amounts earned pre-petition and specifically avoiding all other liens asserted by Fleischer.

---

1 In a collection matter captioned <u>Rapid Freight Systems, Inc. v. BCP International</u>, Fleischer secured the sum of $244.18 in recovery, but only $156.75 was received. Hence, the amount of Trust Monies held by Fleischer as of the Petition Date was $20,712.04.

The Trustee also requested an accounting of fees alleged to have been earned by Fleischer and requiring the turnover of all property of the Debtor in Fleischer's possession.[2]

Both the Trustee and Fleischer subsequently filed several letter briefs in further support of their respective positions regarding the lien rights of Fleischer.  The crux of the issue currently before this Court, an issue over which both sides in this matter have vigorously argued, is whether and/or to what extent Fleischer holds a statutory or common law lien for attorneys' fees in connection with legal services rendered on Debtor's behalf concerning matters which were active and pending at the time the involuntary bankruptcy petition was filed, but not yet resolved.

As noted above, Fleischer argues that it holds a statutory lien in an amount equal to one third (1/3) of any and all funds recovered in connection with any active cases pending on the Petition Date which were commenced by Fleischer.  More specifically, Fleischer argues that

---

[2] On November 11, 2009, creditor Bentley also filed a cross-motion to determine the extent and validity of its liens. By way of background, Bentley allegedly obtained a judgment in New Jersey Superior Court on December 22, 2008 against the Debtor for the sum of $344,640.78.  A Writ of Execution was allegedly served on Fleischer on March 6, 2009.  The Writ of Execution sought "any and all monies, accounts receivable paid for the benefit of Defendant, Rapid Freight Systems, Inc., held in trust or otherwise held in possession of Brian Fleischer...including the rights which the Defendant Rapid Freight Systems, Inc. may have to recover in any lawsuits or causes of action against anyone either by settlement or judgment in which they are represented by said attorney or any other attorney or in whosoever hand the same may be." See Doc. 17-1, Case No. 09-34047 at Exhibit B.  The Order entered by this Court on February 5, 2010, provided the following:

> "Bentley is hereby determined to hold a valid perfected lien on accounts receivable and proceeds up to and until the time of the filing of the involuntary petition by virtue of its pre-petition levy...

> "Bentley's judgment lien should be, and is hereby avoided and preserved for the estate, pursuant to 11 U.S.C. 544 and 550, as to all of the other assets of the Debtor, including, but not limited to, books and records, accounts receivables, and choses in action..

> "Bentley rights to Trust Monies held at the time of the filing of the Petition are specifically not avoided...

> "FSS, pursuant to this Court's December 14, 2009 Order for Turnover and for Related Relief, shall pay Bentley the undisputed value of its lien, less $2,000.00 from the Trust Monies."

because there is no fee dispute between the Debtor and Fleischer, the perfection pre-requisites such as pre-action notice and a complaint/petition are unnecessary to uphold the validity of an attorney's lien.

The Trustee argues that Fleischer is not entitled to any liens[3], statutory or otherwise for the following reasons. First, the Trustee argues that she is able to "avoid the fixing of a statutory lien on property of the debtor to the extent that such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. 545(2). Because Fleischer did not "perfect" its statutory lien pre-petition by bringing a complaint or petition in the underlying action, the Trustee argues, she is able to avoid the statutory liens asserted by Fleischer. Second, the Trustee argues that Fleischer is precluded from asserting a common law charging lien because, as an equitable lien, it is only valid against the Trustee if there are no other available legal means to perfect such lien. Finally, the Trustee argues that Fleischer's common law retaining lien only exists for services rendered pre-petition.

III.    DISCUSSION

A.    Statutory Attorney Lien

Under 11 U.S.C. §545(2), the trustee in bankruptcy has the power to avoid a statutory lien on a debtor's property if the lien "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case." 11 U.S.C. §545(2). This section gives the Trustee the status

---

[3] As noted above, the Trustee concedes that Fleischer's common law retaining lien should attach to those fees earned pre-petition.

of a hypothetical bona fide purchaser as of the date the bankruptcy petition was filed.  *4 Collier*

*on Bankruptcy* p. 545.04 (15th ed. 2010).  The nature, extent and validity of the statutory lien are

matters governed by state law.  See *In re Sea Catch, Inc.*, 36 B.R. 226, 228-30 (Bankr. D. Alaska

1983).  In this case, the applicable law is that of New Jersey. See *In re Pennsylvania Central*

*Brewing Co.*, 135 F.2d 60, 63 (3d Cir. 1943)

Thus, the outcome of this issue depends upon our interpretation of relevant aspects of

"New Jersey's Attorney's Lien Act" *N.J. Stat. Ann. § 2A:13-5* (the "Act"), and case law

interpreting the statute.  See *Hoffman & Schreiber v. Medina*, 224 B.R. 556 (D.N.J. 1998) citing

*Electronic Metal Prods. v. Bittman*, 916 F.2d 1502, 1504 (10th Cir. 1990) ("The validity and

extent of an attorney's lien in bankruptcy is determined by state law").  In order to decide if

Fleischer is entitled to a lien on proceeds received post-petition as a result of actions commenced

pre-petition by Fleischer, this court must first determine if it is a requirement that the lien be

perfected.  If so, this Court must then determine the point at which an attorney is considered to

have perfected his or her attorney's lien under section N.J.S.A. 2A:13-5.

An attorney's right to impress a lien on client property derives from the common law and

generally, our courts recognize "two forms of liens for the collection of fees, the charging (or

special) lien and the retaining lien." *Kevin H. Michels, New Jersey Attorney Ethics* § 37:2-2a at

831 (2002).  The Supreme Court of New Jersey has explained:

> The common law retaining lien attaches to all papers, books,
> documents, securities, moneys, and property of the client which
> come into the possession of the attorney ...which gives an attorney
> the right to retain possession of his client's property until the entire
> balance due him for legal... the retaining lien is distinguishable
> from the common law special or charging lien which an attorney

> may have for services rendered in a particular cause of action and
> which attaches to the judgment in the cause for which the services
> were rendered.  The charging lien may be actively enforced and
> does not rest upon possession.

*Musikoff v. Parrino's the Mint, LLC*, 172 N.J. 133; 796 A.2d 866 (2002) citing *Brauer v. Hotel*

*Assocs., Inc.*, 40 N.J. 415, 419-20, 192 A.2d 831 (1963)(internal citations omitted).

The Act currently provides:

> After the filing of a complaint or third party complaint or the
> service of a pleading containing a counterclaim or cross-claim, the
> attorney or counselor at law, who shall appear in the cause for the
> party instituting the action or maintaining the third-party claim or
> counterclaim or cross-claim, shall have a lien for compensation,
> upon his client's action, cause of action, claim or counterclaim or
> cross-claim, which shall contain and attach to a verdict, report,
> decision, award, judgment or final order in his client's favor, and
> the proceeds thereof in whose hands they may come.  The lien shall
> not be affected by any settlement between the parties before or
> after judgment or final order, nor by the entry of satisfaction or
> cancellation of a judgment on the record.  **The court in which the
> action or other proceeding is pending, upon the petition of the
> attorney or counselor at law, may determine and enforce the
> lien**.

[N.J.S.A. 2A:13-5] (emphasis added).

The statute was intended to codify the common-law or special charging lien and was also

meant to expand the common law lien which had previously only attached to a judgment.  See

*Martin v. Martin*, 335 N.J. Super. 212, 222, 762 A.2d 246 (App. Div. 2000).  While the statute

expanded the reach of the 'attorney lien', such expansion was not without limits and courts are

7

still required to interpret the statute in accord with applicable Rules of Court.  See e.g., *Bernstein,*

*Meisel & Forman, P.A. v. Owens*, 292 N.J. Super, 453, 458, 679 A.2d 155 (App. Div. 1996).

Again, to summarize the parties' positions:  the Trustee argues that under the plain

language of the Act, and in accordance with case law interpreting the relevant language of the

Act, Fleischer's statutory lien remained un-perfected as of the Petition Date and therefore, the

Trustee has the power to avoid the lien pursuant to her strong arm powers under section 545(2) of

the Bankruptcy Code.  The Trustee principally relies upon the case *Hoffman & Schreiber v.*

*Medina*, 224 B.R. 556 (Dist. N.J. 1998) in support of its position.  Fleischer counters that it need

not perfect its lien under N.J.S.A. 2A:13-5 and further, that the holding of *In re Smith*, 263 B.R.

71 (Bankr. D.N.J. 2001) is contrary to the Trustee's position.

It should be noted at the outset that case law on this particular subject matter is

conflicting, and this Court has been unable to locate any case in this Circuit with substantially

similar facts to the one at hand or that is necessarily dispositive of the issues before us.

Therefore, a brief review of the relevant case law and procedural history, where pertinent, is

necessary.

In *Hoffman & Schreiber v. Medina*, 224 B.R. 556 (D.N.J. 1998), a case principally cited

and relied upon by the Trustee, the court had to determine, *inter alia*, whether the bankruptcy

court erred when it held that the law firm only had a general unsecured claim because it failed to

perfect its attorney's lien as of the date the debtor filed her bankruptcy petition.  Shortly before

the petition was filed, the law firm sent debtor a letter which indicated its intent to institute a

lawsuit in order to collect outstanding amounts owed to it.  Thereafter, the law firm filed a proof

of claim in the bankruptcy court asserting a secured claim as a statutory lien-holder in the amount

8

of $23,151.00. The debtor filed a cross-motion to determine the extent and validity of the

statutory lien claimed by the law firm, in which the trustee joined. The district court noted that,

in order to decide if the bankruptcy court's ruling was sound, it had to determine at what point an

attorney effectuates its lien under the Act. After reciting the provisions of the Act, the court

noted that while "an attorney's lien arises at the time of the commencement of the services by the

attorney... creation of an interest in property is not synonymous with perfection of that interest.

*Id.* at 561 citing *H&H Ranch Homes, Inc. v. Smith,* 54 N.J. Super. 347, 351, 148 A.2d 837, 841

(App. Div. 1959). The district court then went through several cases in which the Act's

provisions were discussed and reached the conclusion that the statute does indeed require the

attorney to perform certain affirmative acts and compliance with certain procedures in order to

perfect the interest which is created under the statute. *Id.* Specifically, the district court held that

under §2A:13-5, an attorney's right to assert an attorney's lien is created the first day services are

provided, and the attorney will lose said right unless it follows the specific procedures set forth in

the statute. "Those procedures include not only the requirement that the attorney provide a Pre-

Action Notice to the client in compliance with New Jersey Court Rule 1:20A-6, but also that the

attorney commence a Petition to enforce the inchoate right conferred by §2A:13-5 during the

pendency of the underlying proceeding." *Id.* at 563.

    As noted above, *Hoffman* was a district court opinion rendered on appeal from a

bankruptcy court in 1998. Because the Supreme Court of New Jersey had not yet had occasion to

decide the point at which the statutory attorney's lien is perfected under §2A:13-5, the District

Court reiterated that it was their task to best predict how New Jersey's highest court would

resolve the question. In 2002, the Supreme Court of New Jersey had such occasion and while not

entirely factually similar to the case at hand, the Supreme Court did clarify some points upon which this Court must rely in coming to its conclusion.

In *Musikoff v. Jay Parrino's The Mint, L.L.C.*, 172 N.J. 133, 796 A.2d 866 (2002) the court was asked to determine whether the "[Act] requires that an attorney file a petition to acknowledge and enforce an attorney's lien prior to settlement or judgment in the matter that gave rise to the lien." In *Musikoff*, appellant law firm was retained by Mr. Musikoff in a commercial dispute, but was subsequently replaced by another law firm. The appellant law firm in *Musikoff* then sent a letter to new counsel indicating that it had a lien for unpaid legal services and expenses stemming from its prior representation of Mr. Musikoff. The litigation involving Mr. Musikoff was eventually settled and the district court dismissed the action without costs and without prejudice. The appellant law firm sent a second letter to Mr. Musikoff's most recent law firm inquiring as to the status of the case, however, appellant law firm only learned of the settlement in the underlying litigation after speaking with Mr. Musikoff's adversary in the underlying case. The appellant law firm sent yet another letter informing Mr. Musikoff, through his current counsel, of his right to pursue arbitration of their fee dispute as provided under the New Jersey Rule of Court and also informing Mr. Musikoff that a suit would be brought within thirty days if arbitration was not pursued. *Id.* Shortly thereafter, appellant law firm moved before the district court seeking an acknowledgment of an attorney's lien under the Act and compelling turnover of settlement proceeds into a trust pending the outcome of the fee dispute. The trial court denied the motion on the basis that the appellant law firm had failed to file a petition or complaint asserting the lien while the underlying case was still pending.

The Supreme Court in *Musikoff* first reviewed the relevant statutory language, namely,

the last two sentences of relevant provision of the Act:

> The lien shall not be affected by any settlement or final order, nor
> by the entry of satisfaction or cancellation of a judgment on the
> record.  The court in which the action or other proceeding is
> pending, upon the petition of the attorney or counselor at law, may
> determine and enforce the lien.

*Id.* at 139 citing N.J.S.A. 2A:13-5.  Mr. Musikoff argued that the language of the Act is clear and

unambiguous and required that the petition be filed while the action was *"pending"* in order to be

valid.  *Id.*  Because the case had already been dismissed, Mr. Musikoff argued, the appellant law

firm's lien could not be enforced.  Appellant law firm argued that the second to last sentence of

the Act could not be ignored and that a reasonable interpretation of the provision as a whole

would authorize an attorney to wait at least until the conclusion of the underlying action before

filing the lien petition.  Finding the language ambiguous, the Supreme Court attempted to

interpret the Act sensibly and consistent with a common sense understanding of its underlying

subject matter.  Because "the Act is grounded in equitable principles and designed to protect

attorneys who have represented clients competently and with diligence, but have gone unpaid..."

the Supreme Court held that the last sentence "describes the forum in which a lien petition may

be brought; it does not limit the period within which the petition must be filed."  *Id.* at 146.

The Supreme Court affirmed the basic elements of *H&H Ranch Homes Inc. v. Smith*[4], an

---

[4] In *H&H Ranch Homes, Inc. v. Smith*, 54 N.J. Super. 347, 353, 148 A.2d 837 (App. Div. 1959), the appellate
division confronted two issues: "whether [former attorney had] an attorney's lien by virtue of [the Act] and; the
method and mechanics of impressing such a lien upon [the client's] judgment."  In response to the second issue, the
court stated in a lengthy passage that is often cited in case law:

> For guidance of counsel in connection with future applications, consistent with
> the spirit of our present rules of practice, we suggest that, where the

oft cited case for providing guidance of counsel in connection with applications for the

enforcement of attorneys' liens.  The Supreme Court modified the *H&H Ranch Homes*

framework by providing that the moving attorney is not required to file and enforce a lien prior to

settlement or judgement in the underlying action, but rather the attorney is required to file and

enforce a lien in the "court in which the action or other proceeding is pending."  *Id.* at 146.

Fleischer principally relies upon the case *In re Smith*[5], 263 B.R. 70 (Bankr. D.N.J. 2001)

in support of its position that an attorney's lien does not need to be perfected in order to

withstand the Trustee's strong arm powers under §544.  An examination of the subsequent

procedural history reveals that the decision relied upon by Fleischer was appealed by the trustee

in that case, vacated, and the case remanded.  See *Smith*, 165 Fed. Appx. 961 (3d Cir. 2006).  On

remand the bankruptcy court was persuaded by the Trustee's position, a position strikingly

similar to the one advanced by the Trustee in the instant action.  The bankruptcy court held that

the law firm did not have a valid common law retaining lien or statutory attorneys' lien, and the

---

determination or enforcement of an attorney's lien is sought, the following
procedure ... be employed: The attorney should make application to the court, as
a step in the proceeding of the main cause, by way of petition, which shall set
forth the facts upon which he relies for the determination and enforcement of his
alleged lien.  The petition shall as well request the court to establish a schedule
for further proceedings which shall include time limitations for the filing of an
answer by defendants, the completion of pretrial discovery proceedings, the
holding of a pretrial conference, and the trial.  The court shall, by order, set a
short day upon which it will consider the application for the establishment of a
schedule.  A copy of such order, together with a copy of the petition, shall be
served upon defendants as directed by the court.  The matter should thereafter
proceed as a plenary suit to be tried with or without a jury in the Law Division.

*Id.* At 353-54, 148 A.2d 837 (emphasis added).

[5]  In *In re Smith*, the debtor failed to disclose a worker's compensation claim and personal injury claim in his
bankruptcy case (the "PI Claim"), which was settled post-petition.  The law firm handling the PI Claim asserted an
attorney's lien in its alleged share of the settlement proceeds.  The Trustee argued that the law firm had failed to
perfect its lien prior to the petition date by failing to provide pre-action notice in accordance with the act.  263 B.R.
71 (Bankr. D.N.J. 2001).

Third Circuit affirmed. See *In re Smith*, 165 Fed. Appx. 961 (2006). The Third Circuit characterized the *Smith* case as an example of "procedural fun" with "claim yo-yos through layers of appeals". As such, this Court will give minimal weight, if any, to the initial decision relied upon by Fleischer in support of its position.

Against this backdrop, our analysis is guided by the familiar canon of statutory construction that "[a]bove all, [a court] must seek to effectuate the fundamental purpose for which the legislation was enacted." *Township of Pennsauken v. Schad*, 160 N.J. 156, 170 (1999). Again, Fleischer argues that no perfection of its statutory lien is needed under the Act in order to be enforceable against the funds, if any, recovered in connection with cases pending on the Petition Date. The Trustee argues that the Act is clear and subsequent cases interpreting the Act require Fleischer to have perfected its lien prior to the Petition Date in order to defeat avoidance under the Trustee's strong arm powers. This Court is persuaded by the Trustee's argument. In order to perfect its statutory lien, Fleischer would have had to file a lien petition in the state court forum/forums in which the underlying case/cases were pending. Fleischer failed to commence such an action *via* petition or complaint prior to the Petition Date and therefore, their liens, if any, remained unperfected as of the Petition Date. If Fleischer were to have taken the steps necessary to perfect its statutory lien during the pendency of the Debtor's bankruptcy, (i.e. filing a petition or complaint in pending state court forum) then Fleischer would have done so in violation of the automatic stay currently in effect. Because the lien was neither perfected nor established, it was unenforceable and the Trustee can avoid the lien under 11 U.S.C. § 545(2).

13

The Supreme Court in *Musikoff* affirmed the procedural steps first announced in *H & H Ranch Homes*, which must be taken by counsel in order to protect their statutory lien rights. 172 N.J. 133 (2002). Indeed, the court in *Musikoff* clarified that the Act requires that the petition asserting the lien be brought in the specific forum in which the underlying action is pending. *Id.* While *Musikoff* explained that the petition **need not be filed prior to settlement or judgment**, it reiterated the **necessity of a petition filing in the specific forum** prior to any enforceable and/or perfected lien right arising in favor of the attorney asserting the lien. *Musikoff,* 172 N.J. 133 (emphasis added).

The requirement of "perfection" not only comports with a reasonable reading of the statute, but is also in keeping with the general purpose of "furnishing public notice of the secure party's interest in the collateral, thereby protecting third persons against the secret or undisclosed lien." *Clark v. Valley Fed. Sav. & Loan (In re Reliance Equities, Inc.)* 966 F.2d 1338, 1341 (10th Cir. 1992) (citing *Merrill Lynch v. Van Kylen (In re Van Kylen)*, 98 B.R. 445, 464 (Bankr. W.D. Wisc. 1989)). The concept of "public notice" is intertwined with Code section 545(2) because the avoidance rights given to the trustee are those of a "bona fide purchaser". "Although the term 'bona fide purchaser' is not defined in the Bankruptcy Code, it is generally understood to mean '[o]ne who has purchased property for value without notice of any defects in the title of the seller.'" *United States v. Hunter (In re Walter)*, 45 F.3d 1023, 1030 (6th Cir. 1995). These are the characteristics given to a bona fide purchaser by Code section 545(2) whether or not such a purchaser exists. 11 U.S.C. §545(2). Since Fleischer did not take the requisite affirmative steps to file a petition to enforce its lien in the underlying action, there was no "public notice" and therefore the hypothetical bona fide purchaser under §545(2) who purchased Debtor's property at

14

the time of commencement of Debtor's case could not have had notice of the lien.  It seems clear

that Fleischer's lien falls squarely within the language of Code §545(2) and can thus be avoided

by the Trustee.  The result may seem harsh to Fleischer, however, they are not left wholly

without remedy or redress.  They will still have a general unsecured claim for alleged amounts

owed based upon pre-petition services provided to Debtor in connection with the state court

collection matters.

     Having determined that Fleischer's failure to commence a petition or complaint to

enforce the inchoate right conferred by §2A:13-5 during the pendency of the underlying

proceeding results in the non-perfection of Fleischer's statutory attorney lien, this Court need not

address whether a "Pre-Action" notice pursuant to R. 1:20A-6 is required where there is no

dispute as to the fee amount.   However, this Court notes that the language in R.1:20A-6 does not

condition application of the rule's mandates with the requirement of a "fee dispute" between the

law firm and the client, as argued by Fleischer.  Rule 1:20A-6 specifically provides that:

> No lawsuit to recover a fee may be filed until the expiration of the
> 30 day period herein giving Pre-action Notice to a client ... Pre-
> action Notice **shall** be given in writing, which **shall** be sent by
> certified mail and regular mail to the last known address of the
> client, or, alternatively, hand delivered to the client, and which
> **shall** contain the name, address and telephone number of the
> current secretary of the Fee Committee in a district where the
> lawyer maintains an office...[t]he notice **shall** specifically advise
> the client of the right to request fee arbitration ... the attorney's
> complaint **shall** allege the giving of the notice required by this rule
> or it shall be dismissed.

R. 1:20A-6.  (emphasis added).  Fleischer argues that because there is no fee dispute between

Debtor and Fleischer, perfection prerequisites such as pre-action notice are unnecessary to uphold

the validity of an attorney's lien.  The Trustee correctly points out, however, that R.1:20A-2(a)

expressly provides that fee arbitration has jurisdiction when a person "other than the client is legally bound to pay for the legal services." R.1:20A-2(a). Because Fleischer seeks payment from the assets of the Debtor's estate, it was bound by the requirements of R.1:20A-6 and pre-action notice.

As pointed out by the Superior Court of New Jersey in *Rosenfeld v. Rosenfeld*, 239 N.J. Super. 77 (1989), the procedure first outlined in *H & H Ranch Homes* was modified to require an attorney, prior to filing the petition, to notify the client of the remedy of arbitration. 239 N.J. Super. 77 at 80. "This result is a logical extension of *H & H Ranch Homes* in light of the determination of the [New Jersey] Supreme Court that fee arbitration 'is necessary to maintain public confidence in the Bar as a whole.'" *Id.* at 80 citing *In re LiVolsi*, 85 N.J. 576, 600 (1981).

B.    Common Law Charging Lien

Fleischer argues that, in addition to the statutory lien created by the Act, it also has a common law attorney's charging lien. It is generally accepted that for an equitable lien to be valid against a bankruptcy trustee, there must be no available legal means to perfect such lien. *In re L.D. Patella Construction Corp.*, 114 Bankr. 53 (Bankr. D.N.J. 1990). In *Patella* the court was faced with a similar, although not identical situation to the one at hand. In that case a real estate brokerage firm sought payment of a commission on the sale of certain real property owned by the debtor and argued that it had an equitable lien in the amount of its claim on the proceeds of the sale. *Id.* The debtor argued, however, that the brokerage could have used the available means of recording the "listing agreement" in order to protect its right, and its failure to do so prevented any equitable lien from arising. The court found, however, that a "listing agreement"

16

was not a "recordable" instrument under N.J.S.A. §46:16-1[6] and therefore, the brokerage had an

inchoate equitable lien upon the subject property which was valid as against the bankruptcy

trustee. *Id.* In discussing equitable liens in the context of bankruptcy, the court noted that while a

contract purchaser's equitable lien on real property is void as against a bankruptcy trustee where

such purchaser failed to record the contract of sale as authorized by N.J.S.A. §46:16-1; equitable

interests not created by a recordable instrument are valid as against subsequent judgment

creditors without notice. *Id.* at 58. The court specifically stated that "...an equitable lien will not

be upheld where all available means of perfecting a legal lien were not employed." *Id.* at 58.

---

[6]  Section § 46:16-1, titled "Noninclusive enumeration of instruments entitled to record" provides that:

> [a]ll deeds or instruments of the nature or description hereinafter in this section enumerated, of or affecting the title to real estate in this State, may be acknowledged or proved and then recorded in the office of the county recording officer of the county wherein the real estate is situate:

> a. Conveyances, releases, declarations of trust; letters of attorney for any sale, conveyance, assurance, acquittance or release; leases for life or any term not less than two years, or any assignment thereof absolute, or by way of mortgage or security; agreements for the sale of real estate; written consents of any person to the execution by an executor, administrator with the will annexed or trustee of a power to sell, convey, acquit or release; writings which declare or direct any use or trust of real estate, or which, though made for some other purpose, are yet, by the terms of any recordable deed or will which refers to such writing, made to operate as such declaration or direction;

> b. Mortgages, defeasible deeds or other conveyances in the nature of a mortgage;

> c. Releases or deeds, in which the intention to operate as releases from the lien and effect of any mortgage or judgment is plainly manifested; deeds, releases or postponements in which the intention to operate as a postponement or waiver of priority of the lien of a judgment or judgments, mechanic's lien or liens or recorded mortgage or mortgages to the lien and operation of a mortgage or mortgages recorded, or to be recorded, subsequent thereto, is plainly manifested;

> d. Assignments of mortgages;

> e. Discharges or satisfaction pieces of mortgages;

> f. All other instruments that may have been or may be directed by any statute to be acknowledged or proved and recorded.

Thus, the Court concluded that the brokerage had an equitable lien because it could not have perfected through recording in accordance with New Jersey law. *Id.* a 58.

Similarly, in *In re Colombraro*, 230 B.R. 673 (Bankr. D.N.J. 1999), the bankruptcy court held that a creditor could not assert an equitable lien on property because there existed other available legal means to perfect its lien. In *Colombraro*, prior to the petition date the creditor had issued a consumer loan to debtor and debtor's attorney had written a "letter of protection" to the creditor asserting that certain settlement proceeds due to the debtor would be with withheld for the creditor's benefit once received. The debtor then filed her bankruptcy petition, and the creditor asserted a "lien by assignment" pursuant to the protection letter, or in the alternative, an equitable lien over a portion of the settlement proceeds. The court first held that any prejudgment assignment of part of the proceeds of a personal injury tort claim is void as a matter of law. *Id.* The court went on to note, that even "[a]ssuming arguendo that it [was] possible under New Jersey law to obtain [any] lien on a personal injury claim, [the creditor] could have done so either by an assignment...or by levying execution of [creditor's] judgment on the debtor's interest in the personal injury claim." *Id* at 677. As correctly pointed out by the court in *Colombraro*, "for an equitable lien to be valid as against a bankruptcy trustee, there must be no available legal means to perfect such lien." *Id.* at 676. Because the creditor could have taken any of the above referenced legal actions to perfect its lien, if assignment were indeed valid, the creditor would have been precluded from asserting an equitable lien on the settlement proceeds. *Id.* at 676.

In the instant case, Fleischer had the opportunity to protect its lien by filing a petition or complaint in accordance with N.J.S.A. 2A:13-5. This legal means of statutory protection limits

18

Fleischer's ability to assert an equitable or common law charging lien on any proceeds which

may come to the Debtor's estate post-petition from cases commenced pre-petition by Fleishcer.

Whether it was through inadvertence, lack of diligence, or the unexpected and unfortunate timing

of Debtor's petition in bankruptcy, Fleischer was unable to perfect its lien in accordance with the

legal means available to it prior to the Petition Date and is therefore unable to assert an equitable

common law charging lien at this time.  See *Batt v. Scully*, 168 B.R. 541 (D.N.J. 1994) (where

payment to broker was due under sale agreement ten days after sale, and where the sale took

place post-petition, the trustee could avoid the transfer of property to broker under the strong arm

powers of §544(a)(1); see also *In re Timberline*, 115 Bankr. 787 (Bankr. D.N.J. 1990) (holding

that broker's right to a commission remained inchoate as of the petition date the court held that

broker was not entitled to lien);  *In re Hoffman*, 63 N.J. 69, 77 (1973) (tax refund checks created

through accountant's efforts and received by debtor two years prior to being adjudged insolvent

gave rise to equitable lien in favor of accountant on tax refund).

C.    Common Law Retaining Lien

Fleisher continues to hold a common law retaining lien, as it "cannot be actively enforced

through legal proceedings" and "rests wholly upon the right to retain possession until the bill is

paid."  The Supreme Court of New Jersey described the common law retain lien as follows:

> The common law retaining lien attaches to all papers, books,
> documents, securities, moneys, and property of the client which
> come into the possession of the attorney in the course of, and with
> reference to, his professional employment.  It is a general lien
> which gives an attorney the right to retain possession of his client's
> property until the entire balance due him for legal services, as well
> as for costs and disbursements, is paid.  It is termed a "passive"
> lien since it cannot be actively enforced through legal proceedings,

19

> and rests wholly upon the right to retain possession until the bill is
> paid. The retaining lien is distinguishable from the common-law
> special or charging lien which an attorney may have for services
> rendered in a particular case of action and which attaches to the
> judgment in the case for which the services were rendered. The
> charging lien may be actively enforced and does not rest upon
> possession.

*Braur v. Hotel Assoc. 's, Inc.*, 192 A.2d 831, 833-34 (N.J. 1963) (internal citations omitted). An

attorney will not lose the lien if the files are given up under compulsion of a court order.

*Industry Network Sys. v. Armstrong World Indus.*, 54 B.3d 150, 154 (3d Cir. 1995). Moreover, it

is well settled that an attorney's retaining lien survives bankruptcy. *In re Browy*, F.2d 799, 801

(7th Cir. 1976). On December 10, 2009, this Court entered such an order, compelling turnover of

the Debtor's files in the possession of Fleischer to the Trustee. See Doc. 27, Case no. 09-34047.

   The majority of courts to have considered the issue conclude that an attorney who turns

over the documents to a trustee, as required under 11 U.S.C. §542(e), "may be entitled to a

replacement lien or administrative expense measured by the value the documents provide, if any,

in revealing assets or assisting in the administration of the estate." *In re Herrera*, 390 B.R. 746,

748-49 (Bankr. S.D. Fla. 2008)(finding attorney with retaining lien on debtor's documents had

administrative expense claim for turning over documents, and value would be determined in

accord with recovery of assets to the estate, not amount of unpaid attorney's fees); see also *In re*

*Lewis C. Bowers & Sons, Inc.*, 1990 WL 52415, *1 (D.N.J. April 20, 1990) (finding attorney

entitled to replacement lien on documents until a time when valuation of retaining lien based on

results of recovery of assets could be held); *In re Olmsted Utility, Inc.*, 127 B.R. 808, 811-13

(concluding retaining lien would be granted administrative expense claim status and value of

claim would be based upon the extent of contribution access made to the estate). In *Olmsted*

*Utility*, the bankruptcy court provided the following reasoning for such a valuation:

> [t]he liens and interests provided for in the Code are rights in
> property of the debtor which, at least in principle, are capable of
> sale...[t]he value of the retaining lien, on the other hand, bears no
> relationship to any sort of market concept...[and] [t]he value is
> solely a function of the client's need....[t]he closest analogy is
> ransom not sale.

*Id.* at 812. Thus, because Fleischer had a retaining lien over Debtor's business records and files

and because Debtor's bankruptcy did not void said retaining lien, Fleischer is entitled to a

replacement lien/administrative expense claim measured by the value of the documents provided.

This value will be arrived at after considering the documents' role in revealing assets or assisting

in the administration of the estate.  However, the value will not be the full one third (1/3)

contingency fee Fleischer alleges it is owed on any post-petition recovery of Debtor's assets.

Most courts have found that they must schedule a hearing which will be used to analyze the

value, if any, of the records in question to the recovery and the administration of the estate.  See

*Beef N' Burgundy*, 21 B.R. 69 (Bankr. N.D. Ga. 1982).  Consistent with this Opinion, unless the

parties consensually resolve this issue, they will have the opportunity to participate in a valuation

hearing to determine the value of documents subject to the retaining lien.

IV.    UNDERLINE CONCLUSION

Fleischer's statutory attorney's liens are unenforceable against any funds recovered post-

petition since Fleischer failed to follow the procedures outlined in the New Jersey Attorney's

Lien Act and relevant case law.  The Trustee can therefore avoid the fixing of the liens on the

Debtor's property pursuant to 11 U.S.C. §545(2).  Fleischer's retaining liens were not altered by

the Debtor's bankruptcy and this Court will have to hold a valuation hearing once a

determination can be made regarding the value which the documents provided by Fleischer to the

21

Trustee provided in revealing or recovering assets for the benefit of the estate.  Funds, if any, which may have come into Fleischer's possession post-petition should be turned over to the Trustee.  A scheduling hearing shall be held on April 11, 2011 at 2:00 P.M. via telephone conference to be initiated by counsel for the Trustee.

BY THE COURT:

GLORIA M. BURNS
United States Bankruptcy Judge

Dated: March 31, 2011